IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: 3:13-CV-260-DSC

| | |
|---|---|
| ANGALIS H. GILLIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF CHARLOTTE AND OFFICER )<br>A. RIVERS, individually and in his )<br>official capacity as a police officer of the )<br>Charlotte-Mecklenburg Police )<br>Department, )<br>)<br>Defendants. )<br>)<br>_____) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on "Defendants' Motion for Summary Judgment" (Doc. 14), as well as the parties' associated briefs, affidavits, and exhibits. See Docs. 14, 15, 18, 19 and 20.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this Motion is now ripe for the Court's determination.

Having carefully considered the parties' arguments, the record, and the applicable authorities, the Court grants Defendants' Motion for Summary Judgment, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Angalis H. Gillis' seeks damages for violation of her Constitutional rights pursuant to 42 U.S.C. section 1983. She also asserts various state law claims. On March 25,

2010, Charlotte- Mecklenburg police officers executed a search warrant at the home of Plaintiff's mother, Jessie Hayes, located at 3300 Ross Avenue.

Taking the facts in the light most favorable to the Plaintiff, she drove to her mother's home after receiving a call from her nephew. There were several marked police cars parked on both sides of the street. Fifty to sixty people from the neighborhood were also at the scene. Plaintiff states that

> the officers was standing in the grass to the right of the driveway. The officers let me pull in the driveway did not say mamm you can not park here please park somewhere else. I pulled in slowly, came to a complete stop and parked my car, when Officer A. Rivers backed his body back until the tip of his gun hit the side of my mirror on the passenger side of my 2001 Lincoln LS.

Doc. 19, Ex. 4. Officer Rivers shouted at Plaintiff that she had "hit a f--ing government official." He approached the driver's side of Plaintiff's car and pulled her out. Rivers and several other officers pushed Plaintiff onto the hood of the car and handcuffed her. She was then placed in a police car and searched by a female officer.

Later that day, Officer Rivers appeared before a Mecklenburg County Magistrate and obtained a warrant charging Plaintiff with assault on a government official in violation of N.C. Gen. Stat. § 14-33(c)(4) by striking him with the passenger side mirror of her vehicle as he attempted to secure the perimeter around 3300 Ross Avenue.

On March 12, 2013, Plaintiff filed her Complaint in Mecklenburg County Superior Court. Defendants removed the action to this Court on May 9, 2013. Doc. 1. Plaintiff alleges claims against Defendant Rivers under 42 U.S.C. § 1983 for using excessive force and arresting her without probable cause. She also asserts a claim against the City under 42 U.S.C. § 1983 for failing to adequately train Rivers. Plaintiff asserts claims under North Carolina law for intentional infliction of emotional distress, negligent infliction of emotional distress, assault and

2

battery, malicious prosecution, false imprisonment, actual imprisonment, negligence and punitive damages. All of the state claims against Rivers were brought against the City under the doctrine of respondeat superior.

Defendants' Motion for Summary Judgment has been fully briefed and is ripe for disposition.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The Rule provides procedures for establishing the presence or absence of any genuine dispute as to any material fact:

> (c) Procedures.
>
> > (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> >
> > > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > >
> > > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> >
> > (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

Although the moving party bears the initial burden of stating the basis for its motion and identifying what evidence demonstrates the absence of a genuine issue of material fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The facts must be viewed in the light most favorable to the non-moving party, and where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. See Ricci v. DeStefano, 557 U.S. 557, 585 (2009) (citations omitted).

"The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Coleman v. United States, 369 F. App'x 459, 461 (4th Cir. 2010) (citing Baber v. Hosp. Corp. of Am., 977 F.2d 872, 875 (4th Cir.1992)). The party asserting that a fact cannot be or is genuinely disputed must cite to particular materials in the record, including depositions, documentary evidence, affidavits and declarations. Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

**B.      Section 1983 False Arrest and Excessive Force Claims**

Section 1983 provides relief for civil rights violations committed under color of state law. Jenkins v. Medford, 119 F.3d 1156, 1159–60 (4th Cir.1997). "Under [ ] § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Id. There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause. Street v. Surdyka, 492 F.2d 368, 372–73 (4th Cir.1974). Claims brought under § 1983 alleging the use of excessive force during an arrest are governed by the Fourth Amendment's prohibition against "unreasonable" seizures. Graham v. Connor, 490 U.S. 386, 395 (1989).

Plaintiff alleges that Defendant arrested her without probable cause and used excessive force while making the arrest. Defendant argues that he is entitled to qualified immunity because he had probable cause to arrest Plaintiff and used only minimal force incident to the arrest.

The Fourth Circuit Court has held:

> "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 306 (4th Cir.2006) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)) (internal quotation marks omitted). Officials will receive immunity unless the § 1983 claim satisfies a two-prong test: (1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was "clearly established" such that a reasonable person would have known his acts or omissions violated that right. Id.; see also Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by Pearson v. Callahan, 555 U.S. 223 (2009) (setting up this two-pronged test).

Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011). In Brockington, the Fourth Circuit explained the analysis required to determine whether a plaintiff has met her burden under the two-prong test:

> [W]e must evaluate the reasonableness of the officer's use of deadly [or excessive] force under a multifactor analysis set forth in Graham v. Connor, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Graham governs our analysis of seizures alleged to have been effected in violation of the Fourth Amendment, and more specifically situations where excessive force is employed. 490 U.S. at 399, 109 S.Ct. 1865; see also Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir.2003) (barring excessive force in effecting seizures). Graham specifies that whether force is excessive or not is based on "objective reasonableness" under the circumstances "without regard to [the officer's] underlying intent or motivation." 490 U.S. at 390, 397, 109 S.Ct. 1865. "In assessing whether an officer's actions were objectively reasonable, 'we weigh the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Turmon v. Jordan, 405 F.3d 202, 207 (4th Cir.2005) (quoting Buchanan, 325 F.3d at 527) (internal punctuation omitted). "The nature of the intrusion on a plaintiff's Fourth Amendment rights is generally measured by 'the amount of force employed to [e]ffect the seizure.'" Id. (citing Howerton v. Fletcher, 213 F.3d 171, 173 (4th Cir.2000)). "The extent of the plaintiff's injuries is also a relevant consideration." Id. (citing Buchanan, 325 F.3d at 527.). "Several factors are considered in assessing the governmental interests at stake, including the 'severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer [ ] or others, and whether he ... actively resisted arrest or attempted to evade arrest by flight.'" Id. (citing Graham, 490 U.S. at 396, 109 S.Ct. 1865). "Because 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided." Waterman v. Batton, 393 F.3d 471, 476–77 (4th Cir.2005) (citing Graham, 490 U.S. at 396–97, 109 S.Ct. 1865).

Brockington, 637 F.3d at 506-07.

The defendant's actions are assessed from the perspective of an objectively reasonable officer charged with knowledge of established law. The defendant's motives are irrelevant to the qualified immunity inquiry. Anderson v. Creighton, 438 U.S. 635, 641 (1987). The inquiry also depends upon the reasonableness of the officer's perceptions, and not those of the plaintiff or bystanders. Gooden v. Howard Co., 954 F.2d 960, 965 (4th Cir. 1992).

The Supreme Court has held that qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed

questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).

Applying these legal principles to the facts taken in the light most favorable to the Plaintiff, Defendant Rivers is entitled to qualified immunity and his Motion for Summary Judgment on Plaintiff's § 1983 claims must be granted.

Under North Carolina law, "[t]he essential elements of a charge of assault on a government official are: (1) an assault (2) on a government official (3) in the actual or attempted discharge of his duties." State v. Noel, 609 S.E.2d 10, 13 (N.C. App. 2010). As the Affidavits from both sides indicate, Defendant Rivers knew that he had made contact with Plaintiff's vehicle as he secured the perimeter during execution of the search warrant. Rivers had his back turned to the vehicle. Plaintiff's Affidavit supports an inference that the atmosphere was tense as police attempted to maintain order among a crowd of fifty to sixty bystanders while serving the search warrant. Assuming that Rivers backed into Plaintiff's passenger side mirror as opposed to being struck by it does not change the material fact that Rivers made contact with the vehicle. Reasonable mistakes in perception by officers are the very essence of what qualified immunity is designed to protect.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Put differently, qualified immunity "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" Willingham v. Crooke, 412 F.3d 553, 558 (4th Cir. 2005) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)).

The Supreme Court has "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present" and "those

officials-like other officials who act in ways they reasonably believe to be lawful-should not be held personally liable." Anderson, 483 U.S. at 641. "If every mistaken seizure were to subject police officers to personal liability under § 1983, those same officers would come to realize that the safe and cautious course was always to take no action. The purposes of immunity are not served by a police force intent on escaping liability to the cumulative detriment of those duties which communities depend upon such officers to perform." Gooden, 954 F.2d at 966-67.

Viewed from the objective perspective of a reasonable officer here, there was probable cause to arrest Plaintiff for assault on a government official. There is no evidence that Defendant Rivers' mistaken perception that he was stuck by Plaintiff's vehicle-if in fact he was mistaken-was unreasonable. Since Rivers had probable cause to arrest Plaintiff, he is entitled to qualified immunity as to Plaintiff's § 1983 claim for false arrest. Therefore, the Court grants Defendant Rivers' Motion for Summary Judgment on Plaintiff's § 1983 claim for false arrest.

Taking the record in the light most favorable to Plaintiff, there is no issue of material fact as to whether Rivers used more force than was reasonably necessary in arresting her. Plaintiff has forecast no evidence that Rivers used greater force than was necessary to make a lawful arrest and conduct a search incident to that arrest. Plaintiff's version of the events minus the colorful descriptors is that: (i) Rivers walked up to her vehicle, (ii) grasped her wrist(s) and pulled her out of her vehicle, (iii) handcuffed on her, (iv) placed her over the vehicle to be searched incident to arrest, and (v) placed her in a police vehicle. While Plaintiff states that other officers were involved, Rivers is the only one named.

Plaintiff makes several references to Rivers yelling and cursing at her. Taking those allegations as true for purposes of this Motion, yelling and cursing do not amount to a constitutional violation. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979), cited

8

favorably in, Moody v. Grove, 885 F.2d 865 (4th Cir. 1989) (table) (holding as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim); Morrison v. Martin, 755 F.Supp. 683, 687 (E.D.N.C. 1990) (same). The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats, even if they cause fear or anxiety, do not constitute an invasion of any identified liberty interest. See Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir.1989) (verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir.1983) ("Threats alone are not enough. A [§] 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Keyes v. City of Albany, 594 F.Supp. 1147 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."). The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F.Supp. 970, 973 (E.D.Va. 1973). Therefore, Plaintiff's claim that Rivers yelled and cursed at her is not actionable.

Defendant Rivers is also entitled to the protection of qualified immunity here. Therefore, the Court grants Defendant Rivers' Motion for Summary Judgment on Plaintiff's § 1983 claim for excessive force.

C.  **Section 1983 Claim against City of Charlotte**

Municipal liability generally exists under § 1983 when actions taken pursuant to an official policy or custom cause the deprivation of a constitutional right. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–92 (1978) (interpreting the language of § 1983). However, the

9

court need not make this determination if a constitutional violation has not occurred. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Therefore, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." Id.

Since the Court has determined that Plaintiff's constitutional rights were not violated by her arrest, it is unnecessary to scrutinize the City's policies or customs. Consequently, the Court grants Defendant City of Charlotte's Motion for Summary Judgment on Plaintiff's § 1983 claim.

**D.    State Law Claims**

    **1.    Assault and Battery**

Under North Carolina law, an assault and battery claim may be brought against a law enforcement officer only "if a plaintiff can show that the officer used force against plaintiff which was excessive under the given circumstances." Glenn–Robinson v. Acker, 538 S.E.2d 601, 615 (N.C. App. 2000). Since the Court has concluded that there was no use of excessive force here, Defendants' Motion for Summary Judgment is granted.

    **2.    False Imprisonment and Malicious Prosecution**

The analysis of false imprisonment and malicious prosecution claims turns on whether Rivers had probable cause to arrest the Plaintiff. "False imprisonment" has been defined as "the illegal restraint of a person against his will." Marlowe v. Piner, 458 S.E.2d 220, 223 (N.C. App. 1995). An arrest without probable cause lacks legal authority and is therefore unlawful. State v. Zuniga, 322 S.E.2d 140, 145 (N.C. 1984). "Probable cause is an absolute bar to a claim for false arrest." Williams v. City of Jacksonville Police Dept., 599 S.E.2d 422, 431 (N.C. App. 2004). To maintain an action for malicious prosecution, the plaintiff must demonstrate that the

defendant (1) instituted, procured or participated in the criminal proceeding against the plaintiff; (2) without probable cause; and (3) with malice; and (4) the prior proceeding terminated in plaintiff's favor. State v. Moore, 476 S.E.2d 415, 421 (N.C. App. 1996). Malice "can be inferred from the want of probable cause alone." Fowler v. Valencourt, 423 S.E.2d 785, 788 (N.C. App. 1992). Having concluded that Rivers had probable cause to arrest Plaintiff, the Court grants Defendants' Motion for Summary Judgment.

### 3. Negligence

Plaintiff alleges that the conduct underlying her § 1983 claims also constitutes negligence on the part of Rivers and the City of Charlotte under the doctrine of respondeat superior. Plaintiff alleges that Rivers violated N.C. Gen. Stat. § 15A-401(d)(2) which governs the use of deadly force. There are no factual allegations to support a claim for deadly force. Therefore, the Court will grant Defendants Motion for Summary Judgment on Plaintiff's negligence claim based upon N.C. Gen. Stat. § 15A-401(d)(2).

N.C. Gen. Stat. § 15A-401(d)(1) governs the use of force incident to arrest and states in pertinent part, "a law-enforcement officer is justified in using force upon another person when and to the extent that he reasonably believes it necessary… to effect an arrest of a person who he reasonably believes has committed a criminal offense, unless he knows that the arrest is unauthorized." See Glenn-Robinson, 538 S.E.2d at 623.

Defendant Rivers asserts that Plaintiff's negligence claim is precluded by the public official immunity doctrine. Plaintiff argues that her allegations of malicious conduct on the part of Rivers exceed the doctrine's protective scope and preclude any immunity.

An official enjoys public official immunity "'[a]s long as [he] lawfully exercises the judgment and discretion with which he is invested by virtue of his office ..., keeps within the

11

scope of his official authority, and acts without malice or corruption.'" Epps v. Duke University, 468 S.E.2d 846, 851 (N.C. 1996) (citations omitted). Malicious behavior includes "when [one] wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Id. (citations omitted); see also Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir.2003). Under North Carolina law, there is a "heavy presumption" that police officers "will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." Strickland v. Hedrick, 669 S.E.2d 61, 68 (2008) (internal quotations and citations omitted). The presumption of good faith is overcome only with competent and substantial evidence that "must be sufficient by virtue of its reasonableness …[i]t must be factual, not hypothetical; supported by fact, not be surmise." Id.

Plaintiff claims that Rivers lied about being struck by her vehicle when he appeared before the Magistrate. Plaintiff offers no factual evidence to support her bald assertion that Rivers lied about being struck by her vehicle. Plaintiff forecasts no evidence of what motive Defendant Rivers would have to lie about the incident. Furthermore, Defendant Rivers has offered sworn testimony regarding his lack of malice toward Plaintiff. Therefore, the Court finds that Defendant Rivers is entitled to public official immunity on Plaintiff's claim of negligence and grants Defendants' Motion for Summary Judgment.

The Court has concluded that Rivers had probable cause to arrest the Plaintiff and did not use excessive force. Plaintiff has failed to forecast evidence that Rivers negligently violated N.C. Gen. Stat. 15A-401(d). Consequently, the negligence claim brought by Plaintiff against Defendant City of Charlotte under the doctrine of respondeat superior must fail and the Court will grant Defendants' Motion for Summary Judgment.

### 4. Intentional Infliction of Emotional Distress Claim

Under North Carolina law, a plaintiff must show: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. Hogan v. Forsyth Country Club, 340 S.E.2d 116, 120 (N.C. App. 1986). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Guthrie v. Conroy, 567 S.E.2d 403, 408 (N.C. App. 2002) (quoting Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. App. 1985)). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." Hogan, 340 S.E.2d at 121.

Viewing the disputed facts in Plaintiff's favor, there is no basis to find that the circumstances of her arrest exceed all possible bounds of decency or could be regarded as atrocious and utterly intolerable in a civilized community. Furthermore, Rivers cursing at Plaintiff is not actionable as causing "severe emotional distress." See, e.g., Hogan, 340 S.E.2d at 122–23 (finding no extreme or outrageous conduct when supervisors screamed, called employees names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains). Therefore, the Court will grant summary judgment in favor of Defendants on this claim.

### 5. Negligent Infliction of Emotional Distress Claim

Under North Carolina law, the essential elements of a claim for negligent infliction of emotional distress are (1) a defendant engages in negligent conduct; (2) it was reasonably foreseeable that the conduct would cause the plaintiff to suffer severe emotional distress; and (3) the negligent conduct did indeed cause the plaintiff to suffer severe emotional distress. Wilkerson v. Duke Univ., 784 S.E.2d 154 (N.C. App. 2013). "Severe emotional distress" is

13

defined as "any emotional or mental disorder, such as ... neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Id.

As discussed above, Defendant Rivers is entitled to public official immunity because Plaintiff has not forecast any evidence showing that his actions were malicious. Consequently, the Court grants Defendants' Motion for Summary Judgment on this claim.

### III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. "Defendants' Motion for Summary Judgment" (Doc. 14) is **GRANTED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

Signed: April 2, 2014

David S. Cayer
United States Magistrate Judge